UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**BILLY L. FAILE, JR.,**
**Landlord//Property Manager**

      **Plaintiff,**

**v.**                                          **Case No: 5:22-cv-116-JA-PRL**

**CITY OF LEESBURG, FL, LINNA**
**HART and ALLEN CARTER,**

      **Defendants.**

_____

## REPORT AND RECOMMENDATION[1]

This action under 42 U.S.C. § 1983 and Florida law arises from the allegedly false arrest of Plaintiff, Billy Faile Jr., by the City of Leesburg ("the City"), Sergeant Allen Carter ("Carter"), and Officer Linna Hart ("Hart"). (Doc. 30). Before the Court, upon referral, are Rule 12(b)(6) motions to dismiss Plaintiff's Amended Complaint filed by Hart (Doc. 38), and the City and Carter (Doc. 43). For the following reasons, I recommend that the motions be granted and the Amended Complaint dismissed.

In the Amended Complaint, there are seventeen counts: (1) Count I, Fourth Amendment § 1983 false arrest against Carter; (2) Count II, Fourth Amendment § 1983 false arrest against Hart; (3) Count III, Fourth Amendment § 1983 excessive use of force against Carter; (4) Count IV, Fourth Amendment § 1983 malicious prosecution claim against Hart

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

and Carter; (5) Count V, Fourth Amendment § 1983 unlawful seizure of personal property against Carter; (6) Count VI, Fourth Amendment § 1983 unlawful seizure of real property against Hart and Carter; (7) Count VII, Fourth Amendment § 1983 supervisory claim against Carter; (8) Count VIII, § 1983 *Monell* claim for failure to train against the City; (9) Count IX, § 1983 *Monell* claim for official policy, practice, or custom against the City; (10) Count X, § 1983 *Monell* claim for negligent hiring and retention against the City; (11) Count XI, Florida false arrest claim against Carter; (12) Count XII, Florida false arrest claim against Hart; (13) Count XIII, a Florida battery claim against Hart and Carter; (14) Count XIV, Florida malicious prosecution claim against Hart and Carter; (15) Count XV, Florida intentional infliction of emotional distress claim against Hart and Carter; (16) Count XVI, Florida negligence claim against the City; (17) Count XVII, a Florida claim for official policy, practice, or custom against the City. (Doc. 30 at 11–35).

## I.   BACKGROUND

According to the Amended Complaint, Faile is a rental property manager or landlord, residing in his office at a rental property due to the COVID pandemic. (Doc. 30 at ¶¶ 14–15). Apparently, Faile and a rental property tenant and her boyfriend had ongoing issues, causing them to make several calls to the Leesburg Police Department ("LPD"), including three times on April 3, 2020.

On April 3, 2020, at around 8:16 am, Officer Hart responded to Faile's call to the LPD about an officer standing by while he was checking on damage to the rental property, and Hart answered the call. (Doc. 30 at ¶¶ 16–17). About two hours later, at around 10:55 am, Officer Carver, Officer Hart, and Sergeant Carter (Hart's direct supervisor) responded to Faile's second call to the LPD about damage to the rental property and threats against him

made by a tenant and her boyfriend. (Doc. 30 at ¶¶ 8, 18–19). Hart "completed a report," about the rental property damage and threats made to Faile. (Doc. 30 at ¶ 20).

A few hours later, around 1:45 pm, while Faile was repairing a water leak on the exterior of the rental property, the tenant and her boyfriend returned and the boyfriend pushed Faile to the ground. (Doc. 30 at ¶ 23). Faile stood up and exchanged words with them, before stating that the boyfriend could "kiss [his] ass," lifting his shirt and "slapping his upper back," exposing "approximately one to two inches . . . of his right upper buttocks" while walking away. (Docs. 30 at ¶ 25 & 30-1 at 19). The tenant or boyfriend recorded the incident, and the tenant and Faile called the LPD around 2:00 pm. (Doc. 30 at ¶¶ 26–27). Hart and Carter responded to this call, and while Hart spoke to Faile, Carter spoke to the tenant and her boyfriend. (Doc. 30 at ¶¶ 28–30). Faile asked Hart if he could leave, and Hart said that "she thought it would be a good thing for [him] to leave." (Doc. 30 at ¶¶ 29–30 & Doc. 30-1 at 20). Meanwhile, the tenant and her boyfriend told Carter that they had a video recording of Faile "exposing his buttocks and possibly exposing his genitalia." (Doc. 30 at ¶ 31). After hearing this, as Faile was sitting in his car, leaving or about to leave, Carter told Faile to stop, and that he was under arrest. (Doc. 30 at ¶¶ 32–34 & Doc. 30-1 at 20).

Then Carter approached Faile's truck and pulled him from it, while twisting his right arm behind his back and stating, "stop resisting." (Doc. 30 at ¶¶ 34–35). Faile said he was not resisting, but had a torn rotator cuff, and Carter further twisted his right arm behind his back while calling him "a fragile old man." (Doc. 30 at ¶¶ 35–37). Hart and another officer who responded to this call offered Carter handcuff extenders to prevent further harm to Faile's shoulder, but Carter told them "to be quiet" before ultimately accepting their offer. (Doc. 30 at ¶¶ 38–40). Carter placed Faile in Hart's patrol car, and Carter and Hart both viewed the

tenant's recording before leaving the rental property, purportedly knowing that the recording failed to show Faile exposing his sexual organs. (Doc. 30 at ¶¶ 41–44). Then Carter directed other officers to inventory Faile's truck, before having it towed from the private rental property without Faile's permission or request. (Doc. 30 at ¶¶ 45–48).

After transporting Faile to the LPD booking room, Hart allegedly told Carter on the phone, before he arrived, that she did not see any sexual organs displayed in the video. (Doc. 30 at ¶¶ 49–50). However, when Carter arrived, he told Faile for the first time that he was being charged with exposure of sexual organs, in violation of Fla. Stat. § 800.03.[2] (Doc. 30 at ¶¶ 41 & 51; Doc. 30-1 at 8 & 14). Faile stated several times that he did not expose his sexual organs and that the arrest was not legal, alleging that he was arrested due to Carter's ego and "continuing issues" with the tenant and boyfriend. (Doc. 30 at ¶¶ 52–54). Carter refused to view the video in the LPD booking room in front of Faile and would not discuss the arrest with him, stating "it is a free country, and I can say what I want." (Doc. 30 at ¶¶ 55–56). Carter also told Hart not to discuss the arrest with Faile and began instructing her to write the arrest affidavit "the way I saw it." (Doc. 30 at ¶¶ 57–58). Allegedly, despite knowing the statement was false, Hart "stated as probable cause in the sworn arrest affidavit that the video showed [Faile] 'pulling his pants down while bending over showing his sexual organs and buttocks as he walked south, away from the complainant'." (Doc. 30 at ¶ 59).[3]

---

[2] Under § 800.03:
> A person commits unlawful exposure of sexual organs by:
> (a) Exposing or exhibiting his or her sexual organs in public or on the private premises of another, or so near thereto as to be seen from such private premises, in a vulgar or indecent manner; or
> (b) Being naked in public in a vulgar or indecent manner.

Fla. Stat. § 800.03(1).

[3] The report Defendant Hart prepared about Plaintiff's arrest is LEPD case number 20-04-0028. (Docs. 30 at ¶ 61 & Doc. 30-1 at 8–10).

Faile was held in Lake County Jail until 8:00 pm when he paid the full cash bond amount. (Doc. 30 at ¶ 63). A criminal proceeding was brought against Faile in the County Court of the Fifth Judicial Circuit, case number 2020-MM-001951. (Doc. 30 at ¶ 66). On April 6, 2020, the State Attorney's Office filed a No Information announcement in the case, dismissing the charge of exposure of sexual organs against Faile due to insufficient evidence. (Doc. 30 at ¶ 67). At the request of Chief Hicks, the Florida Department of Law Enforcement (FDLE) administratively expunged Faile's arrest. (Doc. 30 at ¶ 71 & Doc. 30-1 at 21).

As a result of the arrest, Faile was unable to retrieve his truck until April 6, 2022. (Doc. 30 at ¶ 69). He was also unable to return to the rental property, his residence, due to a mandatory victim no-contact order, until April 10, 2020. (Doc. 30 at ¶ 70). Further, Carter was disciplined for inappropriately charging Faile when the video failed to show him exposing his sexual organs. (Doc. 30 at ¶¶ 71–75; Doc. 30-1 at 14). Notably, the discipline report states that this was Carter's "second violation of this nature (CAT 'C') within the past 24-months[.]" (Doc. 30 at ¶¶ 78, 80; Doc. 30-1 at 14). Further, Hart, who was on a "Performance Improvement Plan" prepared by Carter, resigned in lieu of termination due to her direct involvement in Faile's arrest. (Doc. ¶¶ 77–81). On September 25, 2020, Faile provided a notice of claim to the City, pursuant to Fla. Stat. § 768.28, for damages arising out of this arrest. (Doc. 30 at ¶ 82). Now, Faile brings this action for damages against three Defendants—Sergeant Carter, Officer Hart, and the City. (Doc. 30).

## II.   STANDARD OF REVIEW

The bare minimum a plaintiff must set forth in her complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration

to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted).

## III.   DISCUSSION

The Amended Complaint asserts various claims under § 1983 and Florida law against each defendant, asserting some counts against Hart and Carter jointly. Any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. A plaintiff may recover for a violation of his constitutional rights pursuant to § 1983 under a theory of individual or governmental liability.

### A. § 1983 Claims Against Hart and Carter

In Counts I, II, III, IV, V, VI, and VII, Plaintiff seeks damages under § 1983 against Hart and Carter for various Fourth Amendment violations. Hart and Carter argue that they are entitled to qualified immunity shielding them from these § 1983 claims.

#### 1.  Qualified Immunity

It is well established that government agents are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (discussing qualified immunity) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, entitlement to qualified immunity first requires the government agent to show that

he or she was acting within the scope of his or her discretionary authority. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, it is uncontested that Hart was acting within the scope of her discretionary authority. (Docs. 38 at 3 & 41 at 4). Likewise, the allegations demonstrate that Carter was acting within the scope of his discretionary authority as he was "a certified law enforcement officer employed by the [City's] police department" responding to a call and making an arrest. (Doc. 30 at ¶¶ 7, 28; Doc. 43 at 10–12; Doc. 45 at 11); *see Bercini v. City of Orlando*, No. 6:15-cv-1921-Orl-41TBS, 2016 U.S. Dist. LEXIS 195772, at *7–8 (M.D. Fla. Sep. 30, 2016) ("'making an arrest is within the official responsibilities of a sheriff's deputy'; thus an officer making an arrest is acting within his discretionary duty") (quoting *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004); citing *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). However, a plaintiff may overcome qualified immunity by alleging that (1) the government official's conduct was in violation of their constitutional right that was (2) clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (permitting "district courts . . . to exercise their sound discretion in deciding which of the two prongs of the [*Saucier*] qualified immunity analysis . . . [to] address[] first").

### 2. False Arrest Under § 1983, Count I and Count II

In Counts I and II, the Amended Complaint asserts § 1983 claims against Hart and Carter for false arrest in violation of Faile's Fourth Amendment rights. Hart and Carter argue that they are entitled to qualified immunity from the § 1983 claims because Faile fails to allege that his Fourth Amendment rights were clearly established. Faile argues that he sufficiently alleges a violation of his clearly established Fourth Amendment rights by Hart and Carter

knowingly arresting him without probable cause for violating Fla. Stat. § 800.03 and making knowingly false statements to establish probable cause.[4]

While a "warrantless arrest without probable cause violates the Fourth Amendment and is actionable under 42 U.S.C. § 1983[,]" *Ainsworth v. Norris*, 469 F. App'x 775, 776 (11th Cir. 2012), "in all but the most obvious cases, the 'clearly established law must be particularized to the facts of the case.'" *Johnson v. White*, 725 F. App'x 868, 875 (11th Cir. 2018) (citing *White v. Pauly*, 580 U.S. 73, 77 (2017) (clearly established law is not defined "at a high level of generality.")); *see Poulakis v. Rogers*, 341 Fed. App'x 523, 526–27 (11th Cir. 2009) (noting arrest without arguable probable cause can violate clearly established law). To determine whether the law is "clearly established" the Court looks "<u>only to binding precedent</u>—cases from the United States Supreme Court, the Eleventh Circuit, and <u>the highest court of the state</u> under which the claim arose." *Johnson*, 725 F. App'x at 880–81 (citing *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011); then citing *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009)).

---

[4] Notably, the Amended Complaint alleges that Hart and Carter made false statements after Carter arrested Plaintiff, and there is no allegation that a warrant was issued for Plaintiff's arrest. Accordingly, it is unclear that the allegedly false statements violate clearly established law, because they were unnecessary to probable cause. *Rhodes v. Kollár*, 503 F. App'x 916, 923 (citing *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999)) (emphasis added) ("[i]t is clearly established that 'the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit. . . if such false statements *were necessary* to the probable cause.'"); *see also Isom v. Bulso*, No. 8:18-cv-2035-MSS-SPF, 2020 U.S. Dist. LEXIS 207571, at *24 (M.D. Fla. Sep. 29, 2020) ("This prohibition extend[s] . . . to the officer who prepared the warrant affidavit, [and] . . . to any officer 'who provided information material to the probable cause determination.'") (citing *United States v. Kirk*, 781 F.2d 1498, 1503 & n.5 (11th Cir. 1986); then citing *Garmon v. Lumpkin Cnty.*, 878 F.2d 1406, 1408, 1410 (11th Cir. 1989)).

Here, Faile fails to cite to any binding precedent that clearly establishes that Fla. Stat. § 800.03 is unviolated by an individual exposing their buttocks.[5] Moreover, the Amended Complaint alleges that "Florida Statues [sic] definition of sexual organs" excludes buttocks, but Faile fails to cite a specific statutory section, or more importantly binding precedent, that compels this conclusion. (Doc. 30-1 at 18). Without precedent clearly establishing that an individual solely exposing their buttocks fails to violate Fla. Stat. § 800.03, a reasonable officer lacks notice that an arrest of the individual would be without probable cause.[6]

Accordingly, I submit that Hart and Carter are entitled to qualified immunity from Counts I and II because the Amended Complaint fails to allege a violation of Faile's clearly established Fourth Amendment rights against false arrest.

Moreover, it appears that Hart is entitled to qualified immunity, as she argues, because the Amended Complaint fails to allege her personal participation in Faile's arrest. For individual liability under § 1983, the plaintiff must allege that the government official "was personally involved in the acts that resulted in the constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). While the Amended Complaint alleges that Hart's "knowingly false statement" was the "but for" cause of Plaintiff's arrest, (Doc. 30 at ¶ 96), this is directly contradicted by the allegations (and exhibits) demonstrating that she made

---

[5] Notably, the Amended Complaint, and Plaintiff in response to the motions to dismiss, fail to allege or argue that Plaintiff's continued detention violated the Fourth Amendment. *See Vilceus v. City of W. Palm Beach*, No. 08-80968-CIV, 2009 WL 2242604, at *4 (S.D. Fla. July 27, 2009) (noting once officer "possessed sufficient information to conclude that no probable cause existed to detain Plaintiff, the law is clearly established that his continued detention of Plaintiff violated the Fourth Amendment.") (citations omitted); *see Johnson*, 725 F. App'x at 880–81 (noting plaintiff cited and relied on Florida appellate court decision to demonstrate law was clearly established).

[6] In *Johnson v. White*, the Eleventh Circuit noted Florida Courts adopted a "lascivious element into the separate offense of indecent exposure under § 800.03," meaning sexual conduct is required to violate § 800.03. 725 F. App'x at 881 (citing *Payne v. State*, 463 So.2d 271). However, Plaintiff does not cite this case or others, nor argues that they are applicable. *See Johnson*, 725 F. App'x at 880–81.

the statement in the arrest affidavit, after Faile's arrest. (Docs. 30 at ¶ 59 & 30-1 at 7). Further, the Amended Complaint alleges that Carter, Hart's direct supervisor, decided to arrest Faile, told Faile he was under arrest, placed him in handcuffs, and then put him in Hart's vehicle. *See Brown v. City of Huntsville*, 608 F.3d 724, 736–37 (11th Cir. 2010) (finding officer entitled to qualified immunity where he did not make the decision to arrest a plaintiff and was not arresting officer's supervisor). Thus, the Amended Complaint appears to allege that Carter made the decision to arrest Faile without Hart's personal participation.

Accordingly, I submit that Count II should be dismissed, because Hart is entitled to qualified immunity as to Faile's § 1983 claim for false arrest.

Further, Carter argues that he is entitled to qualified immunity from Count I, because the allegations in the Amended Complaint show that there was at least arguable probable cause to arrest Faile for a violation of Fla. Stat. § 800.03. *See Ainsworth*, 469 F. App'x at 776 (a "warrantless arrest without probable cause violates the Fourth Amendment and is actionable under 42 U.S.C. § 1983"). Under § 1983, a claim for false arrest generally requires a showing of "(1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances." *Mbano v. Kriseman*, No. 8:14-CV-1923-T-30TBM, 2014 WL 5782802, at *4 (M.D. Fla. Nov. 6, 2014). Probable cause exists where "an arrest [is] . . . objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). This standard is met when the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that a

suspect had committed, is committing, or is about to commit an offense. *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995).

Alternatively, if an officer had arguable probable cause for an arrest based on the totality of the circumstances, he or she has qualified immunity from false arrest claims. *Cottam v. City of Wildwood*, 750 F. App'x 791, 793 (11th Cir. 2018) (citing *Davis v. Williams*, 451 F.3d 759, 762-63 (11th Cir. 2006)). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the defendants **could** have believed that probable cause existed to arrest Plaintiff." *Jackson v. Cowan*, No. 19-13181, 2022 WL 3973705, at *5 (11th Cir. Sept. 1, 2022) (emphasis added) (citing *City of Huntsville*, 608 F.3d at 734). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough*, 245 F.3d at 1302–03. Notably, an arrest is lawful if "there is probable cause to support an arrest for *any* offense," even if non-existent "for the offense announced at the time of arrest." *Cottam*, 750 F. App'x at 793 (citing *Lee*, 284 F.3d at 1196).

Here, it appears that there was at least arguable probable cause to arrest Plaintiff for violating Fla. Stat. § 800.03, given the allegations that the tenant and her boyfriend told Carter there was a video of Plaintiff exposing his buttocks and "possibly his genitals." After hearing this, Carter saw Plaintiff in his car, allegedly preparing to leave. A reasonable officer could have concluded that Plaintiff had violated Fla. Stat. § 800.03, based on the tenant and boyfriend's statement that the video possibly showed Plaintiff's genitals, their "continuing issues" with Plaintiff, and Plaintiff trying to drive away. *See Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998) ("Generally, an officer is entitled to rely on a victim's criminal

complaint as support for probable cause"); *see Vilceus*, 2009 WL 2242604, at *4 (finding "there was initially arguable probable cause to arrest [p]laintiff when [officer] was told by . . . store manager that [p]laintiff had just shoplifted") (citations omitted).

Finally, Carter allegedly arresting Plaintiff due to his "ego" is irrelevant to whether there is probable cause or arguable probable cause. *City of Huntsville*, 608 F.3d at 735 ("The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs.") (citing *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010)). Notably, the Amended Complaint lacks allegations that Carter told Plaintiff he did not believe there was *any* basis to arrest him at the time of the arrest. *See Andrews v. Scott*, 729 F. App'x 804, 808 (11th Cir. 2018) (accounting for subjective beliefs of officer, who said there was no reason to arrest while arresting plaintiff). Thus, it appears that the Amended Complaint fails to allege a violation of the Fourth Amendment for Faile's arrest, because the allegations show that there was at least arguable probable cause to arrest Faile for a violation of Fla. Stat. § 800.03.

Accordingly, I recommend that Counts I and II, for false arrest in violation of the Fourth Amendment under § 1983, be dismissed.

### 3. Malicious Prosecution Under § 1983, Count IV

As to Count IV, Hart and Carter correctly argue that the Amended Complaint fails to state a malicious prosecution claim, because it does not allege Faile was arraigned or indicted. Under § 1983, to state a *prima facie* claim of malicious prosecution, a plaintiff must allege: "(1) the elements of the common law tort of malicious prosecution and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Rhodes*, 503 F. App'x at 922 (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004)).

> In Florida, the elements of the common law tort of malicious prosecution are: (1) *an original judicial proceeding was commenced* against the plaintiff; (2) the defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in the plaintiff's favor; (4) there was an absence of probable cause for the original proceeding; (5) the defendant had malice; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Id.* (emphasis added) (citing *Kingsland*, 382 F.3d at 1235).

When there is a "warrantless arrest, the judicial proceeding does not commence until arraignment or indictment, and a plaintiff cannot make out a malicious prosecution claim merely for his arrest." *Christman v. Holmes*, 448 F. App'x 869, 872 (11th Cir. 2011) (affirming dismissal of malicious prosecution claims where prosecutor's filing of "No Information" disposed of charges) (citing *Kingsland*, 382 F.3d at 1235); *see Watkins v. Officer Davlin Session*, No. 19-60810-CIV, 2021 WL 663762, at *11 (S.D. Fla. Feb. 19, 2021) (finding "probable cause affidavits" for warrantless arrest were insufficient to constitute legal process) (citing *Love v. Oliver*, 450 F. Supp. 2d 1336, 1342 (N. D. Ga. 2006)). Here, Plaintiff alleges that he was arrested without a warrant, and that the charges against him were dismissed when the state prosecutor filed a No Information. (Doc. 30 at ¶ 67).

Further, Plaintiff concedes in response to Hart's motion to dismiss that he was not arraigned for this charge. (Doc. 38 at 9); *see Wallace v. Kato*, 549 U.S. 384, 390 (2007) (noting damages for false arrest claims are available "up until the issuance of process or arraignment, . . . . [after which] any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.") (citation omitted). Without an allegation that the plaintiff was arraigned or indicted, the Amended Complaint

fails to allege the commencement of an original judicial proceeding sufficient to state a claim for malicious prosecution.

Accordingly, I recommend that Count IV against Carter and Hart for malicious prosecution in violation of § 1983 be dismissed for failure to state a claim.

### 4.   Unlawful Seizure of Real Property, Count VI

In Count VI, the plaintiff asserts a claim for unlawful seizure of real property in violation of the Fourth Amendment against Carter and Hart.

When an officer meaningfully interferes with an individual's possessory interest in certain real property or exercises "dominion and control over" the property, the interference is a seizure. *United States v. Jacobsen*, 466 U.S. 109, 113–22 (1984). The Fourth Amendment prohibits unreasonable seizures, measuring reasonableness "in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). A violation of the "Fourth Amendment requires an *intentional acquisition* of physical control." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (emphasis added) (citation omitted). The detention or "taking itself must be willful,"[7] such that there is no violation due to "unintended consequences of government action. . . . [or] the accidental effects of otherwise lawful government conduct." *Id.* (citation omitted). In other words, *Brower* set forth the requirement that there must be intentional application of governmental means to seize an individual or property. *Id.*

Here, Plaintiff alleges there was a seizure of his real property because the issuance of a mandatory victim no-contact order after his arrest prevented him from returning to his residence without threat of arrest from April 3, 2020, until April 10, 2020. (Doc. 30 at ¶¶ 27,

---

[7] "A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking must be willful." *Id.* at 596 (citations omitted).

63, 68, 70). Hart argues that she was not responsible for the issuance of the victim no-contact order causing the alleged deprivation. Likewise, Carter argues that the plaintiff fails to allege any facts establishing Carter seized his real property or issued the victim no-contact order. As Hart and Carter argue, the Amended Complaint fails to allege facts that they willfully took Plaintiff's residence by issuing the victim no-contact order. Instead, the Amended Complaint alleges that Hart and Carter told Plaintiff about the victim no-contact order, a "mandatory" issuance after Plaintiff's arrest. (Doc. 30 at ¶ 64); *see Brower*, 489 U.S. at 596. Hence, the Amended Complaint fails to allege facts demonstrating that there was a willful taking of Plaintiff's residence, sufficient to state a claim for unlawful seizure of real property in violation of the Fourth Amendment.

Accordingly, Count VI of the Amended Complaint should be dismissed for failure to state a claim for unlawful seizure of real property in violation of the Fourth Amendment.

### B. Florida Law Claims Against Hart and Carter

In Counts XI, XII, XIII, XIV, and XV Plaintiff brings claims under Florida law for false arrest, battery, and malicious prosecution against Hart and Carter, who argue they are statutorily immune from these claims under § 768.28(9)(a).

Under Fla. Stat. § 768.28, an officer is immune from personal liability in tort for his or her own negligence, unless the conduct is done outside the scope of his or her employment, or with bad faith, malice, or a wanton and willful disregard for human rights.[8] Conduct done

---

[8] In full, Fla. Stat. § 768.28(9)(a), provides:

The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard

in bad faith is that done with "actual malice," meaning there is "ill will, hatred, spite, [or] an evil intent." *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017) (citing *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998); quoting *Reed v. State*, 837 So. 2d 366, 369 (Fla. 2002)). Conduct meeting the "wanton and willful" standard is more than gross negligence or mere intentional conduct. *Eiras*, 239 F. Supp. 3d at 1343.

Here, the Amended Complaint appears to allege that Carter and Hart were acting within the scope of their employment when Plaintiff was arrested. (Doc. 30 at ¶¶ 5, 7, 187, 195, 201, 211, 220). While the Amended Complaint fails to explicitly allege that Carter and Hart were acting in bad faith, with malice,[9] or with a wanton and willful disregard for human rights, such allegations are insufficient to overcome § 768.28(9)(a) immunity for Hart and Carter. *Brivik v. Law*, 545 F. App'x 804, 807 (11th Cir. 2013) (upholding application of § 768.28(9)(a), partly because allegation that officer was "act[ing] maliciously and in bad faith is conclusory and therefore insufficient to survive a motion to dismiss.") (citing *Iqbal*, 556 U.S. at 678). Similarly, while the Amended Complaint alleges that Hart and Carter were acting without probable cause, such allegations are insufficient to infer that they were acting with bad faith, malice, or a wanton and willful disregard of human rights or property. *Eiras*, 239 F. Supp. 3d at 1344–45 (alleging arrest "without probable cause and in the absence of lawful

---

of human rights, safety, or property. The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*Id.*

[9] The Amended Complaint alleges that Hart and Carter were acting with malice in regard to the malicious prosecution claims, but fails to incorporate the allegations into other Florida law claims.

authority" insufficient to overcome officer's § 768.28(9)(a) immunity) (citing *Caldwell v. Nocco*, No. 8:14-CV-2167-T-30AEP, 2015 WL 9302835, at *5 (M.D. Fla. Dec. 22, 2015)).

### 1.  False Arrest, Count XI and XII

In Counts XI and XII, Plaintiff asserts claims against Carter and Hart for false arrest in violation of Florida law. Here, although Carter and Hart argue they are entitled to statutory immunity from these claims, the allegations that they "filed false affidavits to fabricate probable cause in support of the arrest, indicat[es] that they were acting in bad faith." *Sada v. City of Altamonte Springs*, No. 609-CV-506-ORL-31KRS, 2009 WL 3334184, at *3 (M.D. Fla. Oct. 7, 2009). Accordingly, I submit that Hart and Carter are unentitled to statutory immunity under Fla. Stat. § 768.28, from Plaintiff's false arrest claims.

In Florida, false arrest is "the unlawful restraint of a person against that person's will." *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) (citing *Johnson v. Weiner*, 155 Fla. 169, 19 So. 2d 699 (1944)). Like with § 1983 claims, "the existence of probable cause or arguable probable cause defeats a Florida false arrest claim." *Caldwell*, 2015 WL 9302835, at *4 (citing *Fernander v. Bonis*, 947 So. 2d 584, 588 (Fla. 4th DCA 2007)). However, under Florida law arguable probable cause is an affirmative defense that the defendant must prove. *Caldwell*, 2015 WL 9302835, at *4 (citing *City of St. Petersburg v. Austrino*, 898 So. 2d 955, 957 (Fla. 2d DCA 2005)). Here, although Hart fails to argue that there was probable cause for Plaintiff's arrest, Carter sufficiently argues that there was at least arguable probable cause for the arrest. Thus, as previously discussed, it appears that there was at least arguable probable cause to arrest Plaintiff for a violation of Fla. Stat. § 800.03.

Accordingly, I recommend the dismissal of Count XI and XII.

### 2. Malicious Prosecution, Count XIV

In Count XIV, the plaintiff brings a malicious prosecution claim under Florida law against Hart and Carter. Like the malicious prosecution claims under § 1983, the malicious prosecution claims under Florida law fail because the Amended Complaint alleges that a "No Information" was filed before any hearing or arraignment. *See Christman*, 448 F. App'x at 872 (noting failure to state federal or state malicious prosecution claim where allegations established plaintiff "was arrested but not arraigned").

Accordingly, I recommend that Count XIV be dismissed for failure to state a claim.

### 3. Battery, Count XIII

In Count XIII, Plaintiff alleges Defendants Hart and Carter battered him by unlawfully arresting him. (Doc. 30 at 28). Hart and Carter argue they are statutorily immune from this claim under under Fla. Stat. § 768.28(9)(a). Here, it appears that the plaintiff fails to allege Hart and Carter acted with bad faith, malicious purpose, or wanton and willful disregard of his rights. Accordingly, I submit that Hart and Carter are entitled to statutory immunity under Fla. Stat. § 768.28(9)(a) from Plaintiff's battery claims.

Under Florida law, to state a battery claim, the plaintiff must allege "that the defendant acted with the intent to cause a harmful or offensive contact with him and such contact occurred." *Ainsworth*, 469 F. App'x at 777 (citing *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)). However, as Carter argues "there is no claim for battery as a result of the touching, such as handcuffing a suspect, incident to an arrest." (Doc. 43 at 18 (first citing *Ainsworth*, 469 F. App'x at 777; then citing *Lester v. City of Tavares*, 603 So. 2d 18, 20 (Fla. 5th DCA 1992)). Here, the Amended Complaint asserts that Plaintiff was harmed when "restrained and handcuffed." (Doc. 30 at ¶ 200). Specifically, Plaintiff complains of being

pulled out of his truck, having his arm twisted behind his back, and then having his arm further twisted after stating he had a torn rotator cuff. Hence, the acts Plaintiff complains of are "no more than ordinary incidents of the arrest, which do not give rise to an independent tort." *Lester*, 603 So. 2d at 19–20; *see Ainsworth*, 469 F. App'x at 778 (finding no independent tort of battery arising from arrest).

Accordingly, I recommend granting Hart and Carter's motions to dismiss Count XIII.

### 4. Intentional Infliction of Emotional Distress, Count XV

In Count XV, Plaintiff asserts a claim for intentional infliction of emotional distress against Hart and Carter, alleging that they made false statements that he exposed his sexual organs, risking his volunteerism and radiology license. (Doc. 30 at 31-32). Hart and Carter argue that there are insufficient allegations to plead intentional infliction of emotional distress as a matter of law, and they are statutorily immune from this claim under under Fla. Stat. § 768.28(9)(a). (Doc. 38 at 15-18; Doc. 43 at 7-10, 27-28).

The elements of this claim are: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. *Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*, 41 So. 3d 246, 256 (Fla. 2d DCA 2010). The Florida Supreme Court has repeatedly advised that, to sustain this claim, the conduct must be "so outrageous in character, and so extreme in degree" that it is considered "atrocious . . . and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985). "Whether conduct is sufficiently 'outrageous' to state a claim for [intentional infliction of emotional distress] is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (citation omitted). "While there is no exhaustive or concrete list of what constitutes

'outrageous conduct,' Florida common law has evolved an extremely high standard." *Merrick v. Radisson Hotels Int'l, Inc.*, No. 8:06-cv-1591-T-24TGW, 2007 WL 1576361, at *4 (M.D. Fla. May 30, 2007) (citing *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993).

Here, while the alleged conduct, "if true, is clearly wrong, it" fails to meet the high standard of outrageousness under Florida law. *See Vilceus*, 2009 WL 2242604, at *5 (dismissing intentional infliction of emotional distress claim because allegations that officer arrested plaintiff for shoplifting after tearing up his receipt, choking him, and handcuffing him for over an hour failed to constitute outrageous conduct); *see also Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 866 (Fla. 3d DCA 2006) (investigating then making false statement to state agency leading to plaintiff's arrest was not outrageous). Hence, the Amended Complaint fails to state a claim for intentional infliction of emotional distress.

Accordingly, I recommend the Court dismiss Count XV.

## C. Claims Against Carter

### 1. Excessive Use of Force in Violation of the Fourth Amendment, Count III

Further, Plaintiff asserts three § 1983 claims against Carter for excessive force (Count III), unlawful seizure of personal property (Count V), and supervisory liability (Count VII).

First, under § 1983, Plaintiff asserts a claim for excessive force in Count III. Carter argues that he is entitled to qualified immunity from the claim, and that the Amended Complaint fails to allege excessive use of force. Under the Fourth Amendment,[10] the

---

[10] Because Plaintiff alleges that the excessive force used against him occurred during his arrest, and before he was placed in the patrol car, the Court analyzes his claims under the Fourth Amendment. Indeed, "Fourteenth Amendment analysis does not begin until 'after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after

"freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197. To determine whether excessive force was used, the court considers whether the actions in question "are 'objectively reasonable' in light of the facts and circumstances." *Garrett v. Athens–Clarke Cnty.*, 378 F.3d 1274, 1279 (11th Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).[11] "A law enforcement officer receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." *City of Huntsville*, 608 F.3d at 738 (citations omitted).

Notably, in the Eleventh Circuit, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing *Williamson*, 65 F.3d at 158–59). Instead, "a genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." *Hadley*, 526 F.3d at 1329 (citing *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006)). Here, the plaintiff does not predicate his excessive force claim on allegations that Carter lacked the authority to arrest him, instead basing the claim on the use of force in effectuating that arrest. Accordingly, I consider "the excessive force claim without regard to the propriety of the underlying arrest." *Andrews*, 729 F. App'x at 810 (citing *Hadley*, 526 F.3d at 1329).

---

the plaintiff has been in detention awaiting trial for a significant period of time."' *Polanco v. City of Marco Island*, No. 2:10-CV-605-FTM-29, 2011 WL 2911002, at *3 (M.D. Fla. July 19, 2011) (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)).

[11] In the Eleventh Circuit, "several factors [are] instructive in determining whether an officer's use of force was objectively reasonable, including '(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically.'" *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).

According to the Amended Complaint, the force Plaintiff complains of is that Carter used to effectuate his arrest—pulling him out of his truck, twisting his arm behind his back, and then twisting further after hearing Plaintiff had a torn rotator cuff. While Carter originally declined handcuff extenders, he ultimately accepted them from Hart and another officer for use on the plaintiff. The Amended Complaint fails to allege any resulting injury from Carter's use of force. It appears that Carter's use of force was objectively reasonable, as despite Carter allegedly calling Plaintiff a "fragile old man," he only used *de minimis* force necessary to effectuate Plaintiff's arrest and used handcuff extenders to accommodate Plaintiff's torn rotator cuff. A reasonable officer with a suspect in their car, attempting to leave, would likely find it reasonable to pull the suspect out of their car, put their arms behind their back, and further pull to handcuff them, eventually using handcuff extenders. Hence, it appears that the Amended Complaint fails to allege the excessive use of force in violation of the Fourth Amendment, and Carter is entitled to qualified immunity from Plaintiff's excessive force claim under § 1983.

Accordingly, I recommend that the Court grant Carter's motion to dismiss Count III.

## 2. Unlawful Seizure of Personal Property, Count V

In Count V, Plaintiff asserts a claim against Carter for unlawful seizure of personal property (his truck) in violation of the Fourth Amendment. According to Plaintiff, Carter authorizing the towing of Plaintiff's truck from his property after arresting him was an unreasonable seizure of his personal property. In response, Carter asserts that under the Fourth Amendment, he was allowed to tow the truck regardless of his motive and is entitled to qualified immunity from the claim.

"Generally, the seizure of personal property is per se unreasonable when not pursuant to a warrant issued upon probable cause." *Crocker v. Beatty*, 886 F.3d 1132, 1136 (11th Cir. 2018) (citation omitted). However, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Here, the Amended Complaint alleges that Plaintiff was in his car when he was arrested and may have been blocking a road ("depot lane"). (Doc. 30-1 at 3). Further, some Courts have held that "[w]hen a driver is custodially arrested, police are permitted to tow and impound the arrestee's car." *Coleman v. Town of Brookside, Alabama*, No. 2:22-CV-00423-RDP, 2022 WL 16540076, at *5 (N.D. Ala. Oct. 28, 2022) (first citing *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992); then citing *South Dakota*, 428 U.S. at 369). Here, Plaintiff was custodially arrested, and his truck was towed incident to arrest. *Cf. Coleman*, 2022 WL 16540076, at *5 (rejecting argument that car was towed incident to arrest where plaintiff was not custodially arrested). Hence, it seems that Carter had cause to tow Plaintiff's truck, and thus, the alleged seizure was not unreasonable.

Accordingly, I recommend that the Court grant Carter's motion to dismiss Count V.

### 3. Supervisory Defendant, Count VII

In Count VII, the plaintiff asserts a claim against Carter for supervisory violations of the Fourth Amendment, including unlawful arrest and unlawful seizures. In response, Carter argues that the Amended Complaint fails to allege facts to support a § 1983 claim against Carter, including his responsibility for the arrest. "A supervisor cannot be liable for the constitutional violation of his subordinate if the constitutional violation was not then clearly established." *Dukes v. Deaton*, 852 F.3d 1035, 1046–47 (11th Cir. 2017) (first citing *Keating v.*

*City of Miami*, 598 F.3d 753, 763 (11th Cir. 2010); then citing *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1235–36 (11th Cir. 2010)). Here, as discussed earlier, there was at least arguable probable cause for Plaintiff's arrest, and it appears that the Amended Complaint fails to allege claims for unlawful seizure in violation of the Fourth Amendment. Thus, Carter is entitled to qualified immunity because Hart's conduct was not a clearly established violation of the Fourth Amendment. *See Dukes*, 852 F.3d at 1047.

Accordingly, I recommend that the Court grant Carter's motion to dismiss Count VII.

### D. Claims against the City

Plaintiff asserts claims against the City under § 1983 and Florida law. The City argues that the § 1983 claims against it must fail because the Amended Complaint insufficiently alleges that it had a policy, custom, or practice that was the moving force behind any alleged constitutional violations. (Doc. 43 at 15–16, 25–26).

#### 1. Claims Under § 1983 and *Monell*

Under § 1983, to hold a government liable, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). If a constitutional violation is established, then the courts must consider "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *accord Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000). A municipality cannot be sued under § 1983 solely for the acts of its employees. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) (finding

that a county cannot be liable for the actions of its employees under a theory of *respondeat superior*).

Instead, "[a] plaintiff seeking to hold a municipality liable under § 1983 must identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *McDowell*, 392 F.3d at 1290 (citations omitted). This requirement "prevents the imposition of liability based upon an isolated incident." *Id*. Indeed, courts recognize that "[w]here a plaintiff claims that a municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'r v. Brown*, 520 U.S. 397, 405 (1997).

### a. Official Policy, Practice, or Custom, Count IX

In Count IX, Plaintiff alleges that his Fourth Amendment rights were violated due to the City's "'P.O.P. statute' or 'piss off police statute'" ("P.O.P. Statute")—its "widespread . . . or longstanding custom or practice . . . [of] arresting an individual after several calls for service to the same location." (Doc. 30 at ¶¶ 168–72).

Denying the existence of the P.O.P. Statute, the City goes on to argue that the Amended Complaint alleges facts contradictory to its existence. (Doc. 43 at 26). Indeed, according to the Amended Complaint, Faile was not immediately arrested when Carter arrived at the rental property. Further, Faile's arrest "is insufficient to show a widespread pattern or practice." *Nicholson v. City of Miami*, No. 1:22-CV-21268-JLK, 2022 WL 17073684, at *2 (S.D. Fla. Nov. 17, 2022) ("pointing to what occurred in your own case is insufficient to show a widespread pattern or practice.") (citing *Smith-Grimes v. City of W. Palm Beach*, No. 11-81201-CIV, 2013 WL 594018, at *3 (S.D. Fla. Feb. 14, 2013)).

Further, the allegation that Carter had a "similar violation in the past 24-months" fails to demonstrate that the City has a P.O.P. Statute constituting deliberate indifference to Fourth Amendment rights. Here, without alleging the violation's nature and details, including that this violation involved the Fourth Amendment and was found unconstitutional, it fails to demonstrate a custom or policy constituting deliberate indifference.[12] *See Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (providing "unadorned statistics" and alleging prior incidents of officers using excessive force insufficient to establish custom where no facts alleged about instances or that they were deemed unconstitutional); *see also Nicholson*, 2022 WL 17073684, at *2-3 (S.D. Fla. Nov. 17, 2022) (dismissing § 1983 claim for failure to allege city had policy or custom of improperly investigating use of force reports against police officers where complaint had "no facts suggest[ed] improper investigation of reports . . . and included no examples of instances . . . [of] similar harm.").

Finally, the Amended Complaint contradicts the existence of the P.O.P. Statute by alleging that Hart and Carter were disciplined for violating the City's "policies and procedures[.]" Notably, the Amended Complaint explicitly alleges that Hart "*resigned in lieu of termination* due to her direct involvement in" Faile's arrest. (Doc. 30 at ¶ 81); *see Nicholson*, 2022 WL 17073684, at *2 (contradicting existence of custom or practice of failing to investigate excessive use of force by alleging city review and internal investigation of use of force reports resulting in officer's termination).

Accordingly, I recommend that the Court dismiss Count IX.

**b.  Failure to Train, Count VIII**

---

[12]  Notably, all that is provided about this "similar violation" is that Carter was found to have "violated policies and procedures regarding (1) job knowledge and performance, and (2) failure to maintain sufficient competency to properly perform his duty." (Docs. 30 at ¶ 73 & 30-1 at 14).

In Count VIII, the Amended Complaint alleges that the City was deliberately indifferent to the consequences of a failure to train its police officers, and its failure to provide adequate training caused the deprivation of Plaintiff's Fourth Amendment right to be free from unlawful seizures. (Doc. 30 at ¶¶ 163–64). Further, the Amended Complaint alleges that the City was deliberately indifferent, because Chief Hicks, the final decision and policy maker for its police department, "knew . . . based on at least one prior instance of conduct[,] that [Defendant Hart and Carter] . . . required additional training . . . or supervision to avoid" violating a person's Fourth Amendment rights. (Doc. 30 at ¶¶ 159–163).

The City argues that the Amended Complaint fails to allege facts that it knew of the need to train or supervise in a particular area and that it made the deliberate choice to not take any action. (Doc. 43 at 26–27). In response, the plaintiff argues that he has alleged sufficient facts to support a claim for failure to train against the City.

A municipality may be liable for a failure to train or supervise when its "employees cause a constitutional injury as a result of the municipality's policy- or custom-based failure to adequately train or supervise its employees." *Johnson v. Israel*, 576 F. Supp. 3d 1231, 1262 (S.D. Fla. 2021) (quoting *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1188 (11th Cir. 2011)). Rarely a city has an express written or oral custom or policy, but it can be found to have such a policy or custom if its failure to train or supervise "amounts to deliberate indifference to the rights of persons with whom the police come into contact[.]" *Israel*, 576 F. Supp. 3d at 1262 (first quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998); then quoting *Harris*, 489 U.S. at 388).

Establishing deliberate indifference requires the plaintiff to "present some evidence that the municipality knew of a need to train . . . or supervise in a particular area and the

municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. Indeed, "[w]ithout notice that . . . training [or supervision] is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen [a policy] that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). For a plaintiff to establish notice, "[a] pattern of similar constitutional violations by untrained [or unsupervised] employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train [or supervise]." *Id.* (quoting *Brown*, 520 U.S. at 403); *see Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (noting a single incident fails to impose liability as a custom is "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it") (citations omitted). Alternatively, in exceptional circumstances,[13] a plaintiff may establish notice where "the need for more or different training is so obvious, ... the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S. at 390.

Here, the plaintiff's allegations are insufficient to establish "a pattern of similar constitutional violations by untrained employees" that is necessary to infer the City acted with deliberate indifference for purposes of a failure to train or supervise claim. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015). The Amended Complaint fails

---

[13] The *Harris* Court gave an example of such circumstances:

> city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.

*Harris*, 489 U.S. at 390 n.10.

to allege a pattern of similar constitutional violations by untrained or unsupervised employees that would place the city on notice of a need to train. *See Whitaker*, 126 F. Supp. 3d at 1323–34 (pointing to four actual, rather than hypothetical, incidents of excessive force). Moreover, the Amended Complaint provides no evidence that the municipality knew of a need to train or supervise in preventing unlawful Fourth Amendment seizures. Hence, the Amended Complaint fails to allege a *Monell* claim for failure to train.

Accordingly, I recommend that the Court dismiss Count X.

### c. Negligent Hiring and Retention, Count X

Count X is a *Monell* claim brought against the City for negligent hiring and retention of Hart and Carter, alleging they had "problems" that the City should have been aware of, indicating their predisposition to violate the rights of others.

To state a negligent retention claim against the City, Plaintiff must allege that "(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Nicholson*, 2022 WL 17073684, at *5 (quoting *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016)). Overcoming dismissal thus requires the plaintiff to plead facts that the City should have foreseen, based on Defendants Carter and Hart's work history, that they would commit the underlying offense. *Nicholson*, 2022 WL 17073684, at *5 (citing *Bello v. Johnson*, 442 F. App'x 477, 480 (11th Cir. 2011)). Here, the Amended Complaint fails to allege facts demonstrating Hart and Carter had "problems" that the City should have been aware of. Thus, the Amended Complaint fails to state a claim for negligent hiring and retention.

Accordingly, I recommend that Count X be dismissed.

### 2. Florida Law Claims

In Count XVI and XVII, the Amended Complaint asserts claims against the City under Florida law for negligence and "official policy, practice, or custom." The City argues that these claims fail, because it owed Plaintiff no special duty in providing public safety services and enforcing the law, and even if it did, these are discretionary decisions entitling it to sovereign immunity that shields it from these claims. (Doc. 43 at 26, 29-32).

### a. Negligence, Count XVI

Count XVI is a negligence claim brought under Florida law against the City for negligently hiring, retaining, and training Hart and Carter. Plaintiff alleges it was the proximate cause of the deprivation of Plaintiff's rights.

Here, as the City argues, the acts Faile complains of are part of its discretionary function of enforcing the law and protecting public safety. Under the Eleventh Amendment, states are immune from suits in federal court. *See Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Com'n,* 226 F.3d 1226, 1231 (11th Cir. 2000). This immunity extends to state agencies, including municipalities. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). However, Florida waives its (and its municipalities) sovereign immunity for tort liability, for "injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the . . . subdivision while acting within the scope of . . . employment if a private person, would be liable to the claimant[.]" Fla. Stat. § 768.28(1); *see* Fla. Const. art. X, § 13. If the court finds the alleged circumstances "would subject a private person to liability under Florida law," a municipality may be liable, unless "the challenged act of the government or its agent is 'discretionary' in nature." *Lewis*, 260 F.3d at 1262, 1264

(citing *Kaisner v. Kolb*, 543 So. 2d 732, 734, 736 (Fla. 1989)). A discretionary action is one that:

> (1) . . . involves a basic governmental policy, program, or objective; (2) . . . is essential to the realization or accomplishment of that policy, program, or objective; (3) . . . require[s] the exercise of basic policy evaluation[s], judgment[s], and expertise on the part of the governmental agency involved; and (4) the governmental agency involved . . . [has] the requisite constitutional, statutory, or lawful authority and duty to do or make[.]

*Lewis*, 260 F.3d at 1264 (quoting *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985); citing *Kaisner*, 543 So. 2d at 737).

As the City correctly states, the type of police power at issue here is discretionary in nature. *Trianon Park Condo. Ass'n, Inc.*, 468 So.2d at 919, 921 ("there has never been a common law duty of care with respect to" "enforcement of laws and the protection of the public safety"). "[U]nder Florida law, 'a governmental agency is immune from tort liability based upon actions that involve its discretionary functions,' including hiring of its employees." *Asia v. City of Miami Gardens*, No. 14-20117-CIV, 2014 WL 12496894, at *3 (S.D. Fla. Aug. 15, 2014) (citing *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1117 (11th Cir. 2005)) (citations omitted). Here, the plaintiff fails to allege any facts demonstrating that the City was acting in its "operational capacity" and "disregarded or negligently implement preexisting hiring protocols." *Asia*, 2014 WL 12496894, at *3 (citing *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1378 (S.D. Fla. 2013)). Thus, the City is immune from tort liability. *See Whitaker*, 126 F. Supp. 3d at 1331 (dismissing Florida law negligent training and supervision claim against county where omissions giving rise to claim were "'discretionary' governmental functions from which the [c]ounty is immune to tort liability.") (citations omitted).

Accordingly, I recommend that Count XVI be dismissed.

### b. Official Policy, Practice, or Custom, Count XVII

In Count XVII, the Amended Complaint asserts a Florida law claim for "official police, practice, or custom," against the City. Although the City fails to argue this, there is no apparent statutory or common law authority for this claim. Moreover, as previously stated, the allegations in the Amended Complaint contradict the existence of the P.O.P. Statute.

Accordingly, I recommend that the Court dismiss Count XVII.

## E. Punitive Damages and Attorney's Fees

Finally, the defendants request that the Court strike the Amended Complaint's request for punitive damages and attorney's fees. As the defendants argue in regard to the Florida law claims, "attorney's fees may not be recovered in the absence of a contractual or statutory agreement authorizing their recovery." *Ou v. Melnikov*, No. 20-61631-CIV, 2021 WL 2380055, at *4 (S.D. Fla. June 10, 2021) (striking request for attorney's fees for Florida false arrest claim) (citing *Bidon v. Dep't of Pro. Regul., Fla. Real Est. Comm'n*, 596 So. 2d 450, 452 (Fla. 1992)); *see* 42 U.S.C. § 1988 (authorizing, in § 1983 actions, at the court's discretion, "a reasonable attorney's fee as part of the costs" for prevailing parties).

Accordingly, I recommend striking the requests for attorney's fees as to Counts XI, XII, XIII, XIV, XV, XVI, and XVII.

Further, as the City argues, punitive damages are unavailable against it in a § 1983 case. *See Israel*, 576 F. Supp. 3d at 1262–67 (striking punitive damages claim against city in § 1983 action) (citations omitted); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983."). Likewise, punitive damages are unavailable against the City under Fla. Stat. § 768.28(5)(a). Fla. Stat. § 768.28(5)(a) ("subdivisions shall be liable for tort claims in the same manner and

to the same extent as a private individual under like circumstances, but liability shall not include punitive damages"); *see D.L. ex rel. v. Hernando Cnty. Sheriff's Off.*, No. 8:22-CV-35-JLB-AEP, 2022 WL 3213423, at *14 (M.D. Fla. Aug. 9, 2022) (finding punitive damages unavailable against county under Fla. Stat. § 768.28(5)(a)).

Accordingly, I recommend that the claims for punitive damages against the City be struck.

## IV.   CONCLUSION

Accordingly, I recommend that the Court grant the defendants' motions to dismiss the Amended Complaint. (Docs. 38 & 43).

Recommended in Ocala, Florida on February 23, 2023.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy