# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

BILLY L. FAILE, JR.,

        Plaintiff,

v.                                   Case No. 5:22-cv-116-JA-PRL

CITY OF LEESBURG, FL, LINNA
HART, and ALLEN CARTER,

        Defendants.

_____

## ORDER

This civil rights case is before the Court on the Motion to Dismiss (Doc. 38) filed by Defendant Linna Hart and the Motion to Dismiss/Strike (Doc. 43) filed by Defendants City of Leesburg and Allen Carter. The assigned United States Magistrate Judge has submitted a Report (Doc. 49) recommending that both motions be granted and that all claims in the Amended Complaint (Doc. 30) be dismissed. Plaintiff, Billy Faile, Jr., has filed Objections (Doc. 52) to the Report, and Defendant Hart—but neither the City nor Defendant Carter—has filed a Response (Doc. 53) to those Objections.

After review of the record, including consideration of the Objections filed by Faile and the Response filed by Hart, the Court agrees with some of the recommendations in the Report but disagrees with others. As explained below, both motions to dismiss will be granted in part and denied in part.

## I.    Background[1]

Faile filed this action after an April 3, 2020 encounter with Hart—a Leesburg police officer—and Carter—a police sergeant and Hart's supervisor—at a rental property that Faile manages.  On that date, Faile was living in his office at the property.  (Am. Compl., Doc. 30, ¶ 15).  That afternoon, Faile had an altercation with the tenant and her boyfriend during which the boyfriend pushed Faile to the ground.  (*Id.* ¶ 23).  As Faile walked away, he "exposed a small portion of skin on the right side of his lower back and approximately one to two inches . . . of his right upper buttocks," (*id.* ¶ 25), slapped the exposed area, (Doc. 30-1 at 19), and told the boyfriend, "[K]iss my ass," (*id.*).

After the altercation, both the tenant and Faile contacted the Leesburg Police Department, and Hart and Carter responded to the scene.  (*Id.* ¶¶ 27-28).  The tenant and her boyfriend informed Carter "that they had a video recording of Faile exposing his buttocks and possibly exposing his genitalia." (*Id.* ¶ 31).  Both Carter and Hart viewed the tenant's video while they were at the property.  (*Id.* ¶ 43; *see also* Disciplinary Action Form, Doc. 30-1 at 14 (stating that both Hart and Carter "watched the video on scene")).  After viewing

---

[1] The facts in the Background section are taken from the Amended Complaint (Doc. 30) and the attachments thereto (Doc. 30-1).  At the motion-to-dismiss stage of the case, the Court must "accept[] the [Amended Complaint]'s allegations as true and constru[e] them in the light most favorable to the plaintiff."  *Gundy v. City of Jacksonville*, 50 F.4th 60, 69 (11th Cir. 2022) (quoting *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296 (11th Cir. 2021)).

the video, Hart "stated that she saw the exposure of sexual organs," and when Carter watched it he "concurred with [Hart]'s assessment." (Doc. 30-1 at 14).

After Hart told Faile he could leave the property, Faile got into his truck. (Am. Compl. ¶ 30, 32). But Carter ordered Faile to stop and told him he was under arrest. (*Id.* ¶¶ 32–33). Carter then forcefully pulled Faile from the truck, (*id.* ¶ 34), handcuffed him, and placed him in Hart's patrol car, (*id.* ¶ 42). Hart transported Faile to the police department, where Carter informed him he was being charged with exposure of sexual organs—a violation of section 800.03, Florida Statutes. (*Id.* ¶¶ 49, 51). After arresting Faile, Carter "seized Faile's truck" and had it towed away from the property. (*Id.* ¶¶ 45–46).

Faile remained at the jail until 8:00 p.m. that evening, when he bonded out. (*Id.* ¶ 63). Three days later, the State Attorney's Office filed an Announcement of No Information on the charge of exposure of sexual organs, and a week after that the Florida Department of Law Enforcement administratively expunged Faile's arrest. (*Id.* ¶¶ 67, 71; Doc. 30-1 at 12). Faile was not able to retrieve his truck from the tow company until April 6. (Am. Compl. ¶ 69). And Hart and Carter told Faile he could not return to the property because of a "no victim contact" order. (*Id.* ¶ 64).

In a sworn report written on the day of the incident, Hart stated that she viewed the tenant's video and that in it she "observed [Faile] pulling his pants down, while bending over showing his sexual organs and buttocks as he

walked . . . away from the victim." (Doc. 30-1 at 7).  The report concludes that Faile "did commit the unlawful offense of F.S.S. 800.03 Exposure of sexual organs by exposing his sexual organs in front of the victim and her boyfriend." (*Id.* at 8).  However, as stated in a Leesburg Police Department Disciplinary Action Form that is attached to the Amended Complaint, "[u]pon review of the evidence (video) it was apparent that [Faile] did not expose his genitals." (Doc. 30-1 at 14).  Carter received a written reprimand based on the incident, (*see id.*), and Hart allegedly "resigned in lieu of termination due to her direct involvement in the arrest," (Am. Compl. ¶ 81).

Faile filed this lawsuit in March 2022.  (*See* Doc. 1).  The Amended Complaint alleges—pursuant to 42 U.S.C. § 1983—ten violations of the Fourth Amendment,[2] and it also asserts seven claims under Florida law, for a total of seventeen claims.[3] (Doc. 30). Defendants move to dismiss all claims, and the

---

[2] The Fourth Amendment is applicable to the states and their subdivisions through the Fourteenth Amendment. *See, e.g., City of Ontario v. Quon*, 560 U.S. 746, 750 (2010).

[3] The Fourth Amendment claims are:  unlawful arrest against Carter (Count I) and Hart (Count II); excessive force against Carter (Count III); malicious prosecution against Carter and Hart (Count IV); unlawful seizure of personal property against Carter (Count V); unlawful seizure of real property against Carter and Hart (Count VI); supervisory liability against Carter (Count VII); failure to train against the City (Count VIII); unlawful policy or practice against the City (Count IX); and negligent hiring and retention against the City (Count X).  The state law claims are:  false arrest against Carter (Count XI) and Hart (Count XII); battery against Carter and Hart (Count XIII); malicious prosecution against Carter and Hart (Count XIV); intentional infliction of emotional distress against Carter and Hart (Count XV); negligence against the City (Count XVI); and "official policy, practice or custom" against the City (Count XVII).

assigned magistrate judge recommends that the motions be granted as to all counts and that Faile's demands for attorney's fees on the state law claims and for punitive damages against the City be stricken.  (*See* Doc. 49).

In his Objections to the magistrate judge's Report, Faile states that he does not object to the dismissal of:  Count III (§ 1983 excessive force against Carter), (*see* Doc. 52 at 14); Count IV (§ 1983 malicious prosecution against both Carter and Hart), (*see id.* at 11); Count VI (§ 1983 seizure of real property against Hart and Carter[4]), (*see id.*); Count VIII (§ 1983 failure to train against the City) (*see id.* at 16); Count IX (§ 1983 policy/practice/custom against the City), (*see id.*); Count XIII (Florida law battery against both Carter and Hart), (*see id.* at 13); Count XIV (Florida law malicious prosecution against both Carter and Hart), (*see id.*); Count XV (Florida law intentional infliction of emotional distress against both Carter and Hart), (*see id.* at 14); or Count XVI (Florida law negligence against the City), (*see id.* at 17).  These counts thus will be dismissed without being discussed in this Order.  However, Faile does object to the recommendation that Counts I, II, V, VII, X, XI, XII, and XVII be dismissed and to the recommendations to strike his demands for attorney's fees on the state law claims and for punitive damages against the City.  The Court will address

---

[4] Although Faile does not object to dismissal of Count VI against Hart and Carter, he requests leave to amend to restate this claim against the correct party. (*See* Doc. 52 at 11).

these claims as well as Faile's request to replead Count VI.

## II.   Discussion

### A.   Claims Against Hart and Carter

#### 1.   *False Arrest Under § 1983 and Florida Law (Counts I and XI–Carter; Counts II and XII–Hart)*

Faile objects to the Report's recommendation that his federal and state false arrest claims (Counts I, II, XI, and XII) be dismissed.   Viewing the Amended Complaint and its attachments in the light most favorable to Faile, the Court concludes that these claims are adequately pleaded and survive Defendants' motions to dismiss.   These counts will thus be permitted to proceed.

On the federal false arrest claims (Counts I and II), the Court agrees with the Report's conclusion that Hart and Carter were acting within their discretionary authority at the time of the events at issue, and thus the burden shifted to Faile to overcome Hart's and Carter's assertions of qualified immunity.   (*See* Doc. 49 at 8).   But when the Amended Complaint and its attachments are viewed in the light most favorable to Faile, Faile's allegations are sufficient to overcome qualified immunity at this stage of the case.

It has long been clearly established that an arrest without probable cause violates the Fourth Amendment right to be free from unreasonable seizures. *See, e.g., Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004).   And "falsifying facts to establish probable cause is patently unconstitutional."   *Id.* Although *arguable* probable cause is sufficient for qualified immunity to attach,

*Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010), when Faile's allegations are accepted as true Hart and Carter did not have even arguable probable cause to arrest Faile for exposure of sexual organs under section 800.03, Florida Statutes.[5]

"Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Id.* (quoting *Kingsland*, 382 F.3d at 1232). "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).

Here, Faile contends that Hart and Carter viewed the tenant's video, claimed that the video showed him exposing his sexual organs (even though it did not), and arrested Faile on that basis. (*See, e.g.*, Compl. ¶¶ 88, 96; Doc. 30-1 at 3 (statement in supplemental police report that Faile was arrested because, among other things, "Officer Hart confirmed that she viewed the video and saw what was reported by" the tenant and her boyfriend)). The attachments to the Amended Complaint support Faile's assertion that the video did not in fact show

---

[5] Although it is enough for qualified immunity if arguable probable cause existed for *any* offense—not necessarily the offense for which a party is arrested—no other offense has been identified for which arguable probable cause was allegedly present.

sexual organs, which would mean that Hart and Carter not only lacked probable cause but also lied about the facts supposedly supporting probable cause. If, as alleged by Faile, the video that the officers viewed did not show sexual organs, Hart and Carter did not have probable cause or even arguable probable cause to arrest Faile.

To the extent Carter and Hart attempt to rely on the statement made to Carter by the tenant and her boyfriend that the video showed Faile "possibly exposing his genitalia," (Am. Compl. ¶ 30), such reliance is foreclosed under the circumstances of this case. That statement cannot support arguable probable cause here because Faile alleges that Hart and Carter viewed the video themselves. Thus, they knew whether it showed Faile exposing his genitalia, and—construing the Amended Complaint in Faile's favor—it did not.

Hart and Carter do not assert that they relied on an exposed buttock on the video as the requisite "sexual organ" for probable cause to arrest Faile, nor do they argue with any vigor that an exposed buttock would be sufficient by itself to support arguable probable cause for the offense of exposure of sexual organs under section 800.03, Florida Statutes. And even if they made this argument, that assertion would be without merit. A belief by an officer that section 800.03 is violated by mere exposure of "one to two inches" of "upper buttocks," (Am. Compl. ¶ 25), would not be objectively reasonable. *See, e.g., G & B of Jacksonville, Inc. v. State Dep't of Bus. Regul.*, 362 So. 2d 951, 956 (Fla.

1st DCA 1978) "(No esoteric discussion is required in order to define or describe 'sexual organs,' nor the location thereof on the human anatomy.  Suffice [it] to say, that exposure of the pubic hair or buttocks or legs (or all three) do not constitute exposure of the sexual organ.").

Moreover, section 800.03 does not proscribe all exposure but only exposure "in a vulgar or indecent manner," § 800.03(1)(a), Fla. Stat., which courts have interpreted as requiring a "lewd or lascivious" element. *See Hoffman v. Carson*, 250 So. 2d 891, 893 (Fla. 1971) (explaining that "'vulgar or indecent manner' . . . must be construed as necessarily relating to a lascivious exhibition of those private parts of a person which common propriety requires to be customarily kept covered in the presence of others"); *accord Goodmakers v. State*, 450 So. 2d 888, 891 (Fla. 2d DCA 1984) ("[I]n order for there to be a violation of section 800.03, there must be, coupled with mere nudity, 'lascivious' exposition or exhibition of the defendant's sexual organs.  The terms 'lascivious' and 'lewd' mean that the perpetrator's exposition or exhibition involves 'an unlawful indulgence in lust, eager for sexual indulgence.'" (quoting *Chesebrough v. State*, 255 So. 2d 675, 677 (Fla. 1971))); *United States v. A Naked Person Issued Notice of Violation No. P419490*, 841 F. Supp. 1153, 1155 (M.D. Fla. 1993) ("The conduct of the Defendants here, as stipulated, is public nudity—no more, no less.  Based on the Florida Supreme Court's interpretation of Sec. 800.03, such conduct does not violate the statute." (citing *Hoffman*)).

Hart's assertions that she cannot be held liable because she did not personally participate in Faile's arrest are also rejected. Although Hart did not complete her arrest affidavit—in which she allegedly made false statements—until after Faile was arrested, the fact that those statements are in a post-arrest affidavit does not mean that they were not also made at the scene or did not form the basis for the arrest. Indeed, this is what Faile alleges and what the Discipline Report suggests. (*See* Am. Compl. ¶ 96 (alleging that Faile "would not have been arrested but for [Hart]'s knowingly false statement that the video she viewed showed [Faile] 'pulling his pants down while bending over showing his sexual organs'"); Doc. 30-1 at 3 (statement in supplemental police report that Faile was arrested because, among other things, "Officer Hart confirmed that she viewed the video and saw what was reported by" the tenant and her boyfriend)).

Thus, construing the Amended Complaint and attachments in Faile's favor, qualified immunity does not apply at this stage of the case and Counts I and II survive the motions to dismiss. The motions to dismiss the state law false arrest claims (Counts XI and XII) similarly must be denied because at this stage, the Court cannot conclude that the officers had probable cause to arrest Faile.

### 2. *Seizure of Personal Property Under § 1983 (Count V– Carter only)*

Faile's objection to the Report's recommendation that Count V be

10

dismissed is well-taken.  In this count, Faile alleges that Carter unreasonably seized his truck in violation of the Fourth Amendment when Carter had the truck towed away from the property after Faile's arrest.  In recommending dismissal of this count, the Report cites cases regarding police authority "to seize and remove from the streets vehicles impeding traffic or threatening public safety," (Doc. 49 at 24 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976))), and then states that "the Amended Complaint alleges that Plaintiff was in his car when he was arrested and may have been blocking a road," (*id.* (citing Doc. 30-1 at 3)).  But the document cited in the Report is not the Amended Complaint (Doc. 30); it is a supplemental police report apparently prepared by Carter, (Doc. 30-1 at 3).  That report does state that Faile's vehicle "was parked in the middle of Depot Lane," (*id.*), but the Amended Complaint alleges that the truck was towed "from private property," (Doc. 30 ¶ 46).

At this stage of the case the Amended Complaint, its attachments, and all reasonable inferences therefrom are to be construed in favor of Faile.  *See, e.g., Gundy v. City of Jacksonville*, 50 F.4th 60, 69 (11th Cir. 2022).  Accepting as true the allegation that the truck was towed from private property—indeed, from property on which Faile was living—rather than being secured in place, this claim of an unreasonable seizure is adequately stated.  (*See also* Disciplinary Action Form, Doc. 30-1 at 14 (stating that Carter "approved the towing of [Faile's] vehicle when it could have been parked and secured at the

scene on his property")).  Carter's motion to dismiss Count V thus will be denied.

### 3.   *Seizure of Real Property Under § 1983 (Count VI—Carter and Hart)*

Although Faile does not object to the dismissal of Count VI—which alleges unreasonable seizure of real property by Carter and Hart based on the "no victim contact" order—he requests leave to amend to replead this claim against the appropriate party.  This request will be granted.

### 4.   *Supervisory Liability Under § 1983 (Count VII—Carter only)*

In Count VII, Faile alleges a Fourth Amendment claim against Carter as a supervisor.  (Am. Compl. ¶¶ 141–155).  The Report recommends dismissing this claim on the basis that the Amended Complaint fails to allege a viable claim under the Fourth Amendment upon which supervisory liability could be based.  (*See* Doc. 49 at 24–25).  Faile objects to this recommendation, and as noted above, the Court disagrees with the Report's conclusion on whether the Amended Complaint states a plausible Fourth Amendment claim.

However, there are other problems with Count VII that require dismissal.  Count VII is a hodgepodge of allegations about the arrest, the "no victim contact"

order,[6] and the seizure of Faile's truck.[7]  Some of the allegations seem to pertain to actions by Carter apart from the actions of Hart, and some are duplicative of counts already alleged against Carter.  It is not clear what kind of Fourth Amendment violation Faile is seeking to hold Carter responsible for as a supervisor.

Thus, the Court will dismiss Count VII, but that dismissal will be without prejudice and with leave for Faile to replead this claim.  In repleading, Faile shall make clear what type of Fourth Amendment violation he is seeking to hold Carter responsible for in his capacity as a supervisor, and he shall not include superfluous allegations.

## B.  Claims Against the City

### 1.  § 1983 (Monell) Negligent Hiring and Retention (Count X)

Faile objects to the Report's recommendation that the Court dismiss Count X—a § 1983 claim against the City for "negligent hiring and retention." Faile urges that his allegations are sufficient to support this claim, and in the alternative he requests leave to amend to replead it.  (Doc. 52 at 16–17.)

Count X does not state a viable § 1983 claim against the City based on its

---

[6] The "no victim contact" order is the basis for Count VI, but Faile has conceded that neither Hart nor Carter is responsible for that order and has conceded that dismissal of Count VI against these two Defendants is appropriate, as recommended in the magistrate judge's Report.

[7] Count V, which pertains to seizure of the truck, is alleged solely against Carter and not Hart.

hiring or retention of Carter because the allegations do not rise to the level of culpability required for such a claim. *See generally Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997) ("In the broadest sense, every injury is traceable to a hiring decision. . . . Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights."). Absent "conscious disregard for a high risk that [the employee] would . . . violat[e a] federally protected right," a municipality cannot be held liable under § 1983 based on an employment decision. *Id.* at 415–16.

Thus, Count X is due to be dismissed. However, the Court will allow Faile to replead this claim to attempt to satisfy the standard of *Brown*, including by providing sufficient factual allegations to support such a theory.

### 2.    *Policy/Practice Under Florida Law (Count XVII)*

The Report recommends that the Court dismiss Count XVII—titled "state law claim official policy, practice or custom"—because "there is no apparent statutory or common law authority for this claim." (Doc. 49 at 33). Faile objects to this recommendation, asserting that "the City did not argue this issue and has waived any argument." (Doc. 52 at 17). Alternatively, Faile requests leave to amend this claim.

The City did argue for the dismissal of Count XVII along with Faile's § 1983 *Monell* claims (Counts VIII, IX, and X). (*See* Doc. 43 at 25–27). Although

14

the Report recommends dismissal on a basis different than that raised by the City, the Report is correct that the basis for Count XVII is unclear.  This count refers to the City causing a deprivation of Faile's Fourth Amendment rights and otherwise tracks—word for word—Count IX, Faile's § 1983 *Monell* "policy, practice, or custom claim"—a claim that Faile concedes in his Objections, (*see* Doc. 52 at 16).

In sum, like the magistrate judge, the Court cannot discern a basis under Florida law for Count XVII.  The Court will, however, grant Faile's request  to replead this claim.

### C.    Attorney's Fees and Punitive Damages

Faile requests attorney's fees in all seventeen counts of the Amended Complaint, including the state law claims.  All Defendants move to dismiss or strike the attorney's fee demands on the state law claims because there is no legal basis for such demands.  The Report recommends granting the motion to strike the demands for fees.  Faile objects to that recommendation, but he provides absolutely no explanation for that objection.  (*See* Doc. 52 at 17). Because Faile has not identified a basis for his objection or for the demands for attorney's fees on his state law claims, those demands will be stricken.

Finally, the Report recommends striking the demands for punitive damages against the City. (Doc. 49 at 33–34).  Somewhat curiously, Faile both objects to this recommendation and states that he "has not made any claims for

punitive damages against the City; therefore, there is nothing to strike." (Doc. 52 at 18). Faile is correct that he did not include demands for punitive damages in any of his claims against the City. (*See* Am. Compl. at 23, 24, 26, 33, & 35). Thus, there is no demand for punitive damages against the City that could be stricken, and the City's motion to strike on this point will be denied.[8]

## III.   Conclusion

Accordingly, it is **ORDERED** as follows:

1.   The Motion to Dismiss (Doc. 38) filed by Defendant Linna Hart is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to Counts IV, VI, XIII, XIV, and XV. It is also granted as to the demands for attorneys' fees in the state law claims, which are hereby **STRICKEN**. The motion is **DENIED** as to Counts II and XII.

2.   The Motion to Dismiss/Strike (Doc. 43) filed by Defendants City of Leesburg and Allen Carter is **GRANTED in part and DENIED in part**. The motion to dismiss is **GRANTED** as to Counts III, IV, VI, VII, VIII, IX, X, XIII, XIV, XV, XVI, and XVII, and the motion to strike is **GRANTED** as to the demands for attorney's fees on the state law claims. The motion to dismiss is

---

[8] In their joint motion, the City and Carter moved to dismiss the punitive damages demands against not just the City but also "the officers" (though Hart has her own counsel and has filed her own motion). (*See* Doc. 43 at 28–29). The Report does not address the demands against Carter or Hart, and no objection has been filed on that point. The Court finds no merit to the motion to strike the demands for punitive damages against the officers, and the motion will thus be denied.

**DENIED** as to Counts I, V, and XI, and the motion to strike the punitive damages demands is **DENIED.**

3.      Counts III, IV, VIII, IX,, XIII, XIV, XV, and XVI of the Amended Complaint (Doc. 30) are **DISMISSED with prejudice**. Counts VI, VII, X, and XVII of the Amended Complaint are **DISMISSED without prejudice** and with leave to replead.

4.      Faile may file a second amended complaint **on or before April 21, 2023**.

5.      Except to the extent that it is expressly approved in this Order, the Report and Recommendation (Doc. 49) is not adopted.

**DONE** and **ORDERED** on March 31, 2023.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Magistrate Judge
Counsel of Record