[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11465

Non-Argument Calendar

_____

BILLY L. FAILE, JR.,
Landlord//Property Manager,

Plaintiff-Appellee,

*versus*

CITY OF LEESBURG, FL, et al.,

Defendants,

LINNA HART,
City of Leesburg Police Officer,
in her individual and official capacity,
ALLEN CARTER,
City of Leesburg Police Officer,

2                      Opinion of the Court                      23-11465

in his individual and official capacity,

                                                  Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:22-cv-00116-JA-PRL

_____

Before JORDAN, BRASHER, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendants Linna Hart and Allen Carter, City of Leesburg police officers, appeal the district court's denial of their motions to dismiss Plaintiff's § 1983 and state law claims for unlawful arrest and unreasonable seizure of personal property. Having carefully reviewed the record and the briefs, we find no error and thus affirm the district court.

## BACKGROUND

This case arises from an encounter Plaintiff had with Defendants Linna Hart and Allen Carter, Leesburg, Florida police officers, in April 2020. The case is on appeal from the district court's ruling on motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, we accept the allegations in Plaintiff's complaint as true and construe them in the light most

favorable to him.[1]  *See Gundy v. City of Jacksonville, Fla.*, 50 F.4th 60, 69 (11th Cir. 2022).

On April 3, 2020, Plaintiff was living in his office at a rental property he managed in Leesburg, Florida.  That afternoon, Plaintiff had an altercation with the tenant and her boyfriend during which the boyfriend pushed Plaintiff to the ground.  As Plaintiff walked away, he "exposed a small portion of skin on the right side of his lower back and approximately one to two inches . . . of his right upper buttocks," slapped the exposed area, and told the boyfriend, "[K]iss my ass."  The tenant and her boyfriend recorded a video of Plaintiff as he walked away.

Both Plaintiff and the tenant contacted the Leesburg police to report the altercation, and Defendants Hart and Carter responded to the scene.  The officers questioned Plaintiff, the tenant, and her boyfriend about the most recent altercation and the incidents that had occurred previously during the day.  The tenant and her boyfriend told Carter during questioning that they had a video recording of Plaintiff exposing his buttocks and possibly his genitalia as he walked away from them earlier.  Carter and Hart viewed the tenant's video on the scene, after which the officers concluded that they "saw the exposure of sexual organs."

Although Hart previously had advised Plaintiff he could leave the scene, Carter yelled at Plaintiff, who was by this time

---

[1] We take these allegations from Plaintiff's first amended complaint, the operative complaint in this case.

inside his truck, to stop and that he was under arrest. Carter then forcefully pulled Plaintiff from the truck, handcuffed him, and placed him in Hart's patrol car. Hart transported Plaintiff to the police department booking room, where Carter informed Plaintiff that he was being charged with exposure of sexual organs in violation of Florida Statutes § 800.03. Carter seized Plaintiff's truck and had it towed from the property.

Plaintiff was booked and remained in the Lake County jail until 8:00 p.m. that evening, when he bonded out. Three days later, the State Attorney's Office dismissed the exposure of sexual organs charge against Plaintiff due to insufficient evidence, and a week after the dismissal the Florida Department of Law Enforcement expunged Plaintiff's arrest. Plaintiff was unable to retrieve his truck from the towing company until April 6, and he was unable to return to his residence at the rental property until April 10 because of a victim "no-contact" order.

Hart and Carter were disciplined by the Leesburg police department due to their involvement in Plaintiff's arrest. According to a disciplinary report attached to the complaint, Hart stated in a report written on the day of the incident that she had viewed the tenant's video and that it showed Plaintiff "pulling his pants down, while bending over showing his sexual organs and buttocks as he walked . . . away from the victim." Hart concluded that Plaintiff had violated Florida Statutes § 800.03 by "exposing his sexual organs in front of the victim and her boyfriend." As noted in the disciplinary report, however, it was apparent from the video that

Plaintiff "did not expose his genitals." Hart allegedly "resigned in lieu of termination" due to her conduct resulting in Plaintiff's arrest. Carter received a written reprimand based on the incident.

Plaintiff subsequently filed this action, asserting § 1983 Fourth Amendment claims for: (1) unlawful arrest, malicious prosecution, and unreasonable seizure of real property against both officers, (2) excessive force, unlawful seizure of personal property, and failure to supervise against Carter, and (3) failure to train, unlawful custom, policy, or practice, and negligent hiring and retention against the City of Leesburg. Plaintiff also asserted Florida law claims against both officers for false arrest, battery, malicious prosecution, and intentional infliction of emotional distress, and he asserted Florida law claims against the City based on negligence and an unlawful custom, policy, or practice.

Defendants moved to dismiss all the claims asserted in Plaintiff's complaint, and their motions were referred to a magistrate judge. The Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the motions be granted in full, and Plaintiff filed objections to the R&R. Plaintiff stated in his objections that he did not oppose the dismissal of his § 1983 excessive force, malicious prosecution, and seizure of real property claims against the individual officers, or his § 1983 failure to train and custom, policy, or practice claims against the City. As to his state claims, Plaintiff stated that he did not oppose the dismissal of his battery, state malicious prosecution, and intentional infliction of emotional distress claims against the officers or his negligence

claim against the City.  Plaintiff then set out specific objections to the R&R's recommended dismissal of his § 1983 claims for false arrest, unreasonable seizure of personal property, supervisory liability, and negligent hiring and retention, his state false arrest claims, and his claim against all Defendants for attorney's fees.  Plaintiff clarified in his objections that he did not assert a claim for punitive damages, as suggested in the R&R.

The district court dismissed Plaintiff's conceded claims without further discussion.  The court also dismissed all of Plaintiff's claims against the City, his § 1983 claim against Carter for supervisory liability, his claim for attorney's fees, and any purported claim for punitive damages, finding no viable basis for those claims.[2]  As to the remaining claims, the court concluded that Plaintiff's § 1983 and Florida false arrest claims against both officers and his § 1983 unreasonable seizure of personal property claim against Carter survived the motion to dismiss.  Specifically, the court held that when the complaint and its attachments were viewed in the light most favorable to Plaintiff, his allegations were sufficient to state a claim for violation of his Fourth Amendment right to be free from unreasonable seizures arising out of both his arrest and the seizure of his truck by Carter.

Defendants appeal, arguing that they are entitled to qualified immunity from Plaintiff's § 1983 false arrest claims because they had at least arguable probable cause to arrest Plaintiff.  Carter also

---

[2]  Neither party challenges the district court's dismissal of those claims.  Accordingly, we do not address them in this opinion.

suggests that he is not liable for Plaintiff's arrest under § 1983 be-
cause he did not personally participate in it.  Hart similarly argues
that Carter is solely responsible for Plaintiff's arrest.  As to Plaintiff's
Florida false arrest claims, Carter argues he is entitled to statutory
immunity under Florida law.  Carter argues further that no Fourth
Amendment right was violated when Plaintiff's truck was towed
because the truck was parked on a public roadway and the tow was
reasonable under the circumstances.  We are unpersuaded by these
arguments and, for the reasons set out below, we affirm the district
court's denial of the motions to dismiss.

## DISCUSSION

### I.   Jurisdiction

We note as an initial matter that this Court has jurisdiction
to consider Hart and Carter's interlocutory appeal of the denial of
their motions to dismiss Plaintiff's complaint on the ground of
qualified immunity.  *See Spencer v. Benison*, 5 F.4th 1222, 1229–30
(11th Cir. 2021).  In general, this Court is "barred from entertaining
appeals of non-final orders."  *Id*. at 1229 (quotation marks omitted).
*See also* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have ju-
risdiction of appeals from all final decisions of the district courts of
the United States[.]").  But the "collateral order doctrine" provides
an exception to the general rule that allows us to review some in-
terlocutory decisions, "including certain denials of qualified im-
munity."  *Spencer*, 5 F.4th at 1229 (quotation marks omitted).  Spe-
cifically, "we may review the denial of a claim of qualified

immunity" to the extent the denial "turns on an issue of law." *Id.* (quotation marks omitted).

Defendants here argue that assuming all of Plaintiff's allegations are true and construing them in his favor, they are entitled to qualified immunity because they did not violate a clearly established constitutional right. Whether Plaintiff's allegations establish the violation of a clearly constitutional right and whether the right was "clearly established" at the time of his arrest are issues of law. *See id.* at 1230. Accordingly, we have jurisdiction to consider this appeal.

## II.   Standard of Review

We review the district court's denial of a Rule 12(b)(6) motion to dismiss based on qualified immunity *de novo*. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019). Likewise, we review *de novo* the district court's determination of "whether a complaint sufficiently alleges a constitutional violation." *Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016) (quotation marks omitted). In conducting our review, "we accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Id.* (quotation marks and citation omitted).

## III.   Plaintiff's § 1983 Claims

### A.   Qualified Immunity

Defendants argue they are entitled to qualified immunity from Plaintiff's Fourth Amendment claims asserted against them in their individual capacities under § 1983. Qualified immunity

"protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (quotation marks omitted). To be clearly established, the contours of a right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (quotation marks omitted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate" and given the official fair warning that his conduct violated the law. *Id.* at 104 (quotation marks omitted). Fair warning is usually provided by "materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case arose." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). "Authoritative judicial decisions" may also "establish broad principles of law that are clearly applicable to the conduct at issue." *Id.* (quotation marks omitted). And very occasionally, "it may be obvious from explicit statutory or constitutional statements that conduct is unconstitutional." *Id.* at 1296–97 (quotation marks omitted).

A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action. *See Patel v. Lanier Cnty., Ga.*, 969 F.3d 1173, 1181 (11th Cir. 2020). Assuming the defendant makes the required showing, the burden shifts to the plaintiff to show that qualified immunity is not

warranted by alleging (1) the violation of a constitutional right, (2) which right was clearly established at the time of the alleged misconduct.  *See id.*  Plaintiff does not dispute that Hart and Carter were acting within their discretionary authority when they arrested him and when Carter had his truck towed.  The burden thus lies with Plaintiff to show that their conduct under the circumstances violated a constitutional right that was clearly established at the time of the incident.

**B.    False Arrest**

1.    <u>Plaintiff sufficiently alleges that Hart and Carter violated his clearly established Fourth Amendment rights when they arrested him</u>.

A warrantless arrest without probable cause violates the Fourth Amendment, and can thus potentially underpin a § 1983 claim.  *Gates*, 884 F.3d at 1297.  "The converse is also true, which means that the existence of probable cause at the time of the arrest is an absolute bar" to a subsequent Fourth Amendment claim arising from it.  *Id.* (quotation marks omitted).  "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."  *Id.* at 1298 (quotation marks omitted).

Even without actual probable cause, an officer is entitled to qualified immunity if he had "arguable probable cause to arrest [the] plaintiff."  *Id.*  "Arguable probable cause exists where

reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest." *Id.* (quotation marks omitted). The arguable probable cause standard "recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007) (emphasis in original).

Defendants argue that they had at least arguable probable cause to arrest Plaintiff for exposing his sexual organs in violation of Florida Statutes § 800.03. Accepting Plaintiff's allegations as true and construing them in his favor, we disagree. Section 800.03 states that a person commits unlawful "[e]xposure of sexual organs" by:

(a)     Exposing or exhibiting his or her sexual organs in public or on the private premises of another, or so near thereto as to be seen from such private premises, in a vulgar or indecent manner; or

(b)     Being naked in public in a vulgar or indecent manner.

Fla. Stats. § 800.03(1).

As the district court held, it would be objectively unreasonable for an officer to believe this statute was violated by Plaintiff's exposure of "a small portion of skin on the right side of his lower back" and "one to two inches . . . of his right upper buttocks." *See G&B of Jacksonville, Inc. v. State, Dep't of Bus. Regul., Div. of Beverage*, 362 So. 2d 951, 956 (Fla. 1st DCA 1978) ("No esoteric discussion is required . . . to define or describe sexual organs, nor the location

thereof on the human anatomy.  Suffice [it] to say, that exposure of the pubic hair or buttocks or legs (or all three) do not constitute exposure of the sexual organ." (quotation marks omitted)).  Moreover, the Florida Supreme Court limited the reach of § 800.03 in *Hoffman v. Carson*, 250 So. 2d 891 (Fla. 1971), when it construed the statute to require "lascivious" or lewd exhibition of sexual organs. *Id.* at 893.  *See also Goodmakers v. State*, 450 So. 2d 888, 891 (Fla. 2d DCA 1984) ("[I]n order for there to be a violation of section 800.03, there must be, coupled with mere nudity, 'lascivious' exposition or exhibition of the defendant's sexual organs.").  The terms "lascivious" and "lewd" have a sexual connotation under Florida law. *See Chesebrough v. State*, 255 So. 2d 675, 677 (Fla. 1971) ("Lewdness may be defined as the unlawful indulgence of lust, signifying that form of immorality which has a relation to sexual impurity.").  It would have been clear to any reasonable officer that element was lacking here.

Nor can Defendants rely on the tenant's statement that she had a video showing Plaintiff "possibly exposing his genitalia" to supply arguable probable cause that he violated § 800.03.  Quite simply, such reliance is foreclosed given Plaintiff's allegation—supported by the disciplinary report attached to the complaint—that the officers viewed the video themselves before arresting Plaintiff. Having seen the video, the officers should have known that it did not show Plaintiff exposing his genitalia, despite what the tenant said.  Indeed, construing the facts in favor of Plaintiff, the video evidence viewed by the officers on the scene established Plaintiff's innocence of the crime for which he was arrested.  *See Washington v.*

*Rivera*, 939 F.3d 1239, 1246 (11th Cir. 2019) ("Officers should not be permitted to turn a blind eye to exculpatory information that is available to them." (quotation marks omitted)).

In short, construing the facts in Plaintiff's favor, the officers did not "reasonably but mistakenly conclude[] that probable cause was present" to arrest Plaintiff for violating § 800.03.  *See D.C. v. Wesby*, 583 U.S. 48, 65 (2018) (quotation marks omitted and alteration adopted).  Instead, they knew after watching the tenant's video that Plaintiff had not exposed his sexual organs in violation of § 800.03, but falsified their account of the incident in statements made in support of his arrest under that statute.[3]  *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) ("[F]alsifying facts to establish probable cause is patently unconstitutional."), *abrogated on other grounds by Washington v. Howard*, 25 F.4th 891, 899 (11th Cir. 2022).  "[E]xisting precedent" at the time of Plaintiff's arrest made the unconstitutionality of the arrest under those circumstances "beyond debate."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation marks omitted).

Finally, Defendants do not credibly argue that they had arguable probable cause to arrest Plaintiff for a different crime, even if they knew he had not violated § 800.03.  *See Manners v. Cannella*,

---

[3]  As discussed, the attachments to the complaint support Plaintiff's assertion that the video did not in fact show sexual organs, and that the officers not only lacked probable cause but also lied about the facts supposedly supporting probable cause.  Carter's supervisor stated that upon review of the video it was apparent Plaintiff did not expose his genitals.

14                    Opinion of the Court                    23-11465

891 F.3d 959, 969 (11th Cir. 2018) ("Probable cause for an arrest
may be found if there is probable cause to believe any crime was
committed, whether or not there is probable cause for the crime
the arresting officer actually believed had been committed").  In
support of this argument, Defendants claim Plaintiff could have
been arrested for disorderly conduct, trespass, or stalking pursuant
to various Florida criminal statutes.  Specifically, Hart claims Plain-
tiff could have been arrested for trespass because he refused to
leave the tenant's rented premises, and that he could have been ar-
rested for stalking because he continued to harass the tenant after
being warned to stay off her property.  Carter likewise describes
Plaintiff's supposed failure to comply with warnings by the police
earlier in the day to leave the tenant alone so the situation could
de-escalate.  Carter also states that Plaintiff drove off in his truck
and "it did not appear as though he was going to stop" despite be-
ing advised to do so.

     The above facts do not come from Plaintiff's complaint but
instead from Hart and Carter's description of the events leading up
to Plaintiff's arrest on April 3, 2020.  That is, Plaintiff does not allege
in the complaint that he harassed the tenant, refused to leave her
premises, or failed to comply with any police warnings.  And his
account of being pulled out of his truck as he began to drive away
from the scene differs substantially from Carter's description.  De-
fendants note that these facts are recounted in the responses they
submitted as part of the disciplinary investigation arising from
Plaintiff's arrest, and that the responses are attached to the com-
plaint.  But that does not mean the facts are undisputed, nor make

those facts an appropriate basis for granting a Rule 12(b)(6) motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

> 2.    Plaintiff alleges that Hart and Carter both personally participated in his arrest, such that § 1983 liability is available for each officer.

Each Defendant suggests, in the alternative, that individual liability under § 1983 is not appropriate because his or her actions did not cause Plaintiff's alleged Fourth Amendment violation. Individual liability under § 1983 requires a causal connection between the individual defendant's conduct and the alleged constitutional violation. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) ("To establish § 1983 liability, a plaintiff must show proof of an affirmative causal connection between a government actor's acts or omissions and the alleged constitutional violation, which may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation.") (quotation marks omitted). Hart and Carter each claim that the other officer is solely responsible for Plaintiff's arrest and, consequently, that there is no basis for imposing individual liability under § 1983. Again, we are not persuaded.

It is true that "[m]erely being present with the arresting officers at the scene is not enough" to establish the causal connection required to impose individual liability for an unlawful arrest under § 1983. *Id.* Plaintiff alleges more than mere presence on the part

of both Hart and Carter, however.  Specifically, Plaintiff claims Hart completed the affidavit of probable cause that led to his arrest, and that she falsely stated in the affidavit that the tenant's video showed Plaintiff "pulling his pants down while bending over show-ing his sexual organs and buttocks as he walked south, away from the victim."  Although Hart did not complete the affidavit until af-ter Plaintiff was arrested, construing the facts in Plaintiff's favor, her statements were made verbally at the scene and were part of the basis for his arrest.  Indeed, this is what the disciplinary report attached to the complaint suggests.  That is sufficient to viably al-lege causation at this stage of the proceeding.  *See id.*

As to Carter, Plaintiff alleges that he executed the arrest after receiving confirmation from Hart that the tenant's video showed Plaintiff exposing his sexual organs and buttocks, and after viewing the video himself.  Plaintiff further claims that Carter was Hart's supervisor, and that he told her what to write in the arrest affidavit. Again, those facts are sufficient to viably allege a causal connection between Carter's individual conduct and Plaintiff's arrest.  *See id.*

### C.   Unreasonable Seizure of Personal Property

We also agree with the district court that, construing the facts in Plaintiff's favor, Carter is not entitled to qualified immunity from Plaintiff's Fourth Amendment claim based on the unreasona-ble seizure of his truck.  "Generally, the seizure of personal prop-erty is *per se* unreasonable when not pursuant to a warrant issued upon probable cause."  *Crocker v. Beatty*, 886 F.3d 1132, 1136 (11th Cir. 2018) (citation omitted).  There are several exceptions to this

rule, and it is well-established that police have the authority to seize and remove from the street "vehicles impeding traffic or threatening public safety and convenience." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). But Plaintiff claims his truck was towed from private property where he was living, parked in a location where it did not impede traffic or threaten public safety. The disciplinary report attached to the complaint supports Plaintiff's claim, stating that Carter "approved the towing of Plaintiff's vehicle" when it could have been "parked and secured at his own property." Given those facts, Plaintiff has set out a viable claim for unreasonable seizure of personal property based on the towing of his truck.

## IV.    **State False Arrest Claims**

Finally, and for the reasons discussed above, Plaintiff's Florida false arrest claims against Hart and Carter survive their Rule 12(b)(6) motion to dismiss. As Defendants acknowledge, a false arrest claim under Florida law has essentially the same elements as a claim for false arrest under § 1983. *See Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1325 (11th Cir. 2008) ("As the text of the Florida Constitution's search and seizure provision explains, the Florida Constitution affords the same protections against unreasonable searches and seizures as the Fourth Amendment, and Florida courts follow opinions of the United States Supreme Court in interpreting the Florida Constitution's search and seizure protections."). Construing the facts in the light most favorable to Plaintiff, Hart and Carter arrested Plaintiff for exposing his sexual organs in violation of Florida Statutes § 800.03 although they both knew he had not violated the statute and after falsifying statements made

in support of the arrest. That is sufficient to state a false arrest claim under Florida law. *See id.*

Defendants argue they are statutorily immune from Plaintiff's state law false arrest claim pursuant to Florida Statutes § 768.28(9)(a). Construing the facts in Plaintiff's favor, we disagree. Section 768.28 provides immunity from personal liability for an officer's negligent acts within the scope of his employment, but it does not provide immunity if the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stats. § 768.28(9)(a). For purposes of this statute, an officer acts maliciously when he acts "with the subjective intent to do wrong." *Baxter v. Roberts*, 54 F.4th 1241, 1271 (11th Cir. 2022) (quotation marks omitted). Plaintiff alleges that Hart and Carter acted maliciously when they arrested him knowing he had not committed a crime and fabricated evidence to manufacture probable cause for the arrest. Construing the facts in favor of Plaintiff, these acts were not merely negligent, but intentional, malicious, and in bad faith. Thus, Hart and Carter are not entitled to dismissal of Plaintiff's state false arrest claims based on statutory immunity under Florida law.

## <u>CONCLUSION</u>

For the reasons stated above, we **AFFIRM** the district court's order denying Hart and Carter's motions to dismiss Plaintiff's § 1983 and state false arrest claims, as well as its order denying

23-11465                 Opinion of the Court                 19

Carter's motion to dismiss Plaintiff's § 1983 claim for the unreasonable seizure of personal property.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 14, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 23-11465-AA
Case Style: Billy L. Faile, Jr. v. Linna Hart, et al
District Court Docket No: 5:22-cv-00116-JA-PRL

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered
today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP
41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time
for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in
the clerk's office within the time specified in the rules. **A petition for rehearing _must_ include
a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th
Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the
Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39
and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any
objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation via the eVoucher system no later than 45 days after issuance of the mandate or
the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

## Misti Bean

| | |
|---|---|
| **From:** | ecf_help@ca11.uscourts.gov |
| **Sent:** | Tuesday, May 14, 2024 10:28 AM |
| **To:** | FLMD_EFILE_APPEALS |
| **Subject:** | 23-11465-AA Billy L. Faile, Jr. v. Linna Hart, et al "Opinion Issued On the Courts own Motion Opinion" (5:22-cv-00116-JA-PRL) |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

### United States Court of Appeals for the Eleventh Circuit

**Notice of Docket Activity**

The following transaction was filed on 05/14/2024

| | |
|---|---|
| **Case Name:** | Billy L. Faile, Jr. v. Linna Hart, et al |
| **Case Number:** | 23-11465 |
| **Document(s):** | 54 |

**Docket Text:**
Opinion issued by court as to Appellants Allen Carter and Linna Hart. Decision: Affirmed. Opinion type: Non-Published. Opinion method: Per Curiam. The opinion is also available through the Court's Opinions page at this link http://www.ca11.uscourts.gov/opinions. (23-11466X)

**Notice will be electronically mailed to:**

Stephanie J. Brionez
Clerk - Middle District of Florida, Clerk of Court
Laura K. Hargrove
Dale A. Scott

The following document(s) are associated with this transaction:
**Document Description:** Opinion Issued
**Original Filename:** 202311465.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1160056652 [Date=05/14/2024] [FileNumber=10202257-0]
[3760a34fad7103cef4f28553568e2ac8c27873f23966b44b22bae79a01bc93e22f76f2fc5c64de61948bf7cd20f035016d90
bf5857394aeaacd75b9fa2add681]]

**Document Description:** OPIN-1 Notice to Counsel/Parties
**Original Filename:** /opt/ACECF/live/forms/JeffPatch_2311465_10202257_OPIN-1NtcofIssuanceofOpinion_300.pdf
**Electronic Document Stamp:**

[STAMP acecfStamp_ID=1160056652 [Date=05/14/2024] [FileNumber=10202257-1]
[58d10a12d26ba8bc6c96f07cf555dfdcd3765e5f3da5e22fb53f70280976209f5d581db5aa75ae6f10d645befae466716da7
7e7831ec02458d27ad0bf732bd40]]
**Recipients:**

- Stephanie J. Brionez
- Clerk - Middle District of Florida, Clerk of Court
- Laura K. Hargrove
- Dale A. Scott